## 20878

SEBRITE CORPORATION, Appellant, v. TRANSOUTH FINAN-
CIAL CORPORATION, Respondent.

(252 S. E. (2d) 873)

*James Coffas,* Columbia, *for appellant.*

*John W. Foard, Jr.,* and *Isadore S. Bernstein,* Columbia, *for respondent.*

February 7, 1979.

LITTLEJOHN, Justice:

The court below, and here, is called upon to determine which of two innocent corporations must bear a loss growing out of a deception by third parties.

The facts are not in dispute. The defendant Transouth Financial Corporation (Floor-planner) is engaged in the business of lending money to retail mobile home dealers and taking floor-plan agreements covering inventory, owned and/or afterwards acquired, as security for loans. Sebrite Corporation (Retail Financier) is engaged in the business of lending money to retail purchasers of mobile homes and taking mortgages on them as security for consumers' debts. B.C.L. Mobile Homes (Dealer) is a partnership, owned by Messers. Bland, Crenshaw and Lowe, and engaged in retail sales to the public.

A floor-plan agreement was entered into by the Floor-planner and the Dealer on January 15, 1970, and was recorded, as required by law, in the office of the Secretary of State for South Carolina. On March 15, 1974, the Dealer executed and delivered to the Floor-planner a collateral promissory note, under the terms of which the Floor-planner was given a valid floor-plan type lien on a 1974 Winco mobile home. The Dealer delivered to the Floor-planner a manufacturer's certificate of origin and the Floor-planner

advanced the sum of $8,500.00. The mobile home became a part of the Dealer's inventory for sale to the public.

One of the partners, Bobby L. Lowe, and his wife, Minnie Lowe, bought the mobile home from the Dealer, which financed it through the Retail Financier, delivering to the Retail Financier a duplicate manufacturer's certificate of origin. Thereupon, the Retail Financier disbursed its check to the Dealer in the amount of $8,742.00. The sale was not reported to the Floor-planner by the Dealer. The Retail Financier procured a certificate of title, similar to those issued for motor vehicles, from the South Carolina Highway Department. It recited that the Lowes were owners and that the Retail Financier (Sebrite) held a first lien on the mobile home. The Lowes moved the unit to Horry County and made ten monthly payments, in the amount of $186.00 each, to the Retail Financier. They then defaulted. The Floor-planner, acting under its security agreement, brought an action in claim and delivery for possession of the mobile home, naming only the Dealer partners as parties-defendants. The Court of Common Pleas for Horry County granted possession to the Floor-planner, which sold the home to an innocent purchaser, Mrs. Corley, of Lexington. Presumably, she is still in possession of it.

This action was brought by the Retail Financier, alleging that the Floor-planner wrongfully repossessed the mobile home. The complaint alleges that the Retail Financier had a first lien mortgage. The prayer for relief demands judgment in the amount of $50,000.00, actual and punitive damages. It does not ask possession of the unit. The answer asserts a general denial and alleges that the Floor-planner's lien was prior.

After all of the testimony had been taken, the judge ruled that only questions of law were involved and dismissed the jury; there is no appeal from this ruling. Apparently, while studying the case, the judge detected that there was on the certificate of title, issued by the High-

way Department in favor of the Lowes (an exhibit), a "Release of First Lien," signed by an authorized agent of Sebrite Corporation. This release had not been mentioned in the pleadings, nor referred to in the evidence. The evidence was to the effect that the Lowes still owed Sebrite, the Retail Financier, $9,876.00. The judge, by letter, asked counsel to comment upon the question and the effect of the release. Counsel for the Retail Financier, by letter, explained the signing of the release as being a mistake and submitted an affidavit of the Retail Financiers Customer Credit Manager, explaining that the release was a clerical error. Counsel for the Floor-planner, by letter, objected to receipt of the affidavit by the court..

We think that the judge erred in receiving the affidavit without reopening the case. In light of the fact that the release had not been made an issue at the trial, the affidavit, even if proper for consideration, warranted only the conclusion that the release was executed through error. This is especially true when considered in the light of the fact that it has not been disputed that $9,876.00 still remains due to the Retail Financier. The debt has not been paid. In our recent case of *Peoples Bank of South Carolina, Inc. v. Robinson,* S. C., 249 S. E. (2d) 784 (1978), we held that cancellation of a note and security agreement through clerical error did not discharge the indebtedness or the agreement.

We now reach the crucial issue: which of these two lien creditors is entitled to priority?

Both the Floor-planner and the Retail Financier perfected their respective liens in accordance with the Uniform Commercial Code. A floor-plan agreement must be filed with the Secretary of State. This makes it possible for one to learn, upon inquiry, whether a dealer has a floor-plan agreement covering his inventory. The particular units covered by the floor-plan agreement are not ascertainable at the office of the Secretary of State. It is in the scheme of

such financing that the dealer must be permitted flexibility of sales to the public and retail financing necessary thereto. A member of the public entering a dealer's showroom should not be, and is not required to concern himself with whether the mobile home he proposes to buy is covered by a floor-plan agreement and subject to a floor-plan lien. To a certain extent, the floor-planner must rely upon the integrity of the dealer to route the purchase money, or a portion thereof, back to the floor-planner in payment of a portion of the floor-plan debt.

If, instead of the Dealer selling this mobile home to one of its partners, the sale had been to a member of the general public, the solution to the problem would readily appear more clear. We think, however, that the Retail Financier is in the same position as an innocent purchaser for a valid consideration. A buyer, in the ordinary course of the dealer's business, is given priority over the dealer's inventory financier. Section 36-9-109(4), *Code of Laws of South Carolina* (1976). So far as the record in this case shows, the transaction, as viewed from the standpoint of the Retail Financier, was regular. There was nothing to make the Retail Financier suspicious of the transaction, and it was not until after ten monthly payments had been made that cause for suspicion arose. Irregularity first appeared when the Dealer failed to notify the Floor-planner of the sale of the mobile home and failed to remit any part of the $8,742.00 it received from the Retail Financier. The Dealer not only failed to notify and remit, but designedly concealed from the Floor-planner the fact that the mobile home had been sold and was no longer in its possession.

To hold that an innocent purchaser for value, or an innocent retail lender for valuable consideration, must investigate the right of the dealer to sell and give good title, would stagnate retail sales so necessary to commerce.

Our ruling is consistent with our Commercial Code, § 36-9-312(4), which applies to the facts in this case; it reads as follows:

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter."

When the sale was made to Bobby L. and Minnie Lowe, the mobile home became consumer goods and was no longer a part of the Dealer's inventory. Goods are inventory only if they are ". . . held by a person who holds them for sale or lease . . ." Code § 36-9-109(4). At the time the Retailer Financier took a mortgage on the mobile home, it was no longer a part of the Dealer's inventory.

Unfortunately, the real culprits are apparently insolvent, and one of two innocent lenders must suffer. We hold that it must be the Floor-planner, Transouth.

The lower court erred in basing its decision on the release and in failing to hold as a matter of law that the lien of Sebrite, the Retail Financier, was superior. It follows that the plaintiff is entitled to a verdict. The amount of that verdict must now be determined by the trial court on remand, and that is the only issue remaining in the case.

Reversed and Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.